**IT IS ORDERED as set forth below:**

**Date: May 22, 2025**

_____

**Jeffery W. Cavender**
**U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | CASE NO. 24-62934-JWC |
| DENISHA SEMAJ JOHNSON, | CHAPTER 13 |
| Debtor. | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are 15 motions that all boil down to the same question: whether to enforce the terms of a settlement announced and agreed to on the record at a hearing before this Court on February 26, 2024 (the "February Hearing"). After carefully considering the various motions and papers filed by the parties, the arguments and evidence presented at two hearings, and the record in this bankruptcy case, the Court will enforce the settlement for the reasons that follow.

1

## I.    JURISDICTION

The Court has jurisdiction over these proceedings pursuant to 28 U.S.C. § 1334. These proceedings are core matters pursuant to 28 U.S.C. § 157(b).

## II.    PROCEDURAL BACKGROUND

Debtor Denisha Semaj Johnson has 13 pending motions which the Court divides into two categories. Ms. Johnson filed five motions prior to the February Hearing (the "Pre-Hearing Motions"):

1. Motion for Sanctions for Violation of the Automatic Stay (Doc. No. 31, as amended at Doc. No. 34) (the "First Sanctions Motion");

2. Motion for Sanctions for Violation of Automatic Stay, Request for Damages, Restoration of Possession, Public Exposure Damages, and Humiliation Damages (Doc. No. 38, as amended by Doc. No. 40) (the "Second Sanctions Motion");

3. Motion to Add Additional Evidence to the Motion for Sanctions for Violation of Automatic Stay, Request for Damages, Restoration of Possession, Public Exposure Damages, and Humiliation Damages (Doc. No. 47) (the "Third Sanctions Motion");

4. Motion for Emergency Relief to Restore Possession of Property (Doc. No. 62) (the "Emergency Sanctions Motion"); and

5. Emergency Motion for Protective Order and other relief (Doc. No. 101) (the "New Evidence Motion").

After the February Hearing, Ms. Johnson filed eight more motions (the "Post-Hearing Motions"):

1. Motion to Notify Court of Pending Settlement Negotiations and Request to Reserve Future Claims (Doc. No. 106) (the "Notice of Pending Settlement");

2. Motion for Contempt and Sanctions for Willful Violation of the Automatic Stay, Fraud, and Request to Strike Fraudulent Writ of Possession (Doc. No. 110) (the "Motion for Contempt");

3. Motion to Contest Eviction and Enforce Automatic Stay (Doc. No. 111) (the "Motion to Contest");

4. Supplemental Motion to Strike the January 31, 2025 State Court Order as Void Ab Initio for Violation of the Automatic Stay and Reservation of Rights (Doc. No. 116) (the "Motion to Strike");

5. Motion to Reconsider Settlement Terms, Request for Emergency Hearing, and Request to Pause Settlement Pending Full Review of Newly Discovered Evidence (Doc. No. 120) (the "Motion to Reconsider");

6. Motion to Set Aside Settlement Agreement (Doc. No. 125) (the "Motion to Set Aside");

7. Emergency Motion to Strike Opposing Counsel's (Motion to Enforce Settlement) Due to Fraudulent Writ of Possession, Violation of Automatic Stay, and Grant Immediate Relief (the "Motion to Strike") (Doc. No. 133); and

8. Emergency Motion to Strike Opposing Counsel's Motion to Enforce Settlement, Fraudulent Eviction and for Immediate Relief (the "Second Motion to Strike") (Doc. No. 134).

That leaves two motions: (1) the Motion to Enforce Settlement Agreement and Brief in Support (Doc. No. 126) (the "Motion to Enforce") filed by Ms. Johnson's former landlord, WOP 550 Northridge, LLC and Greystar ("Northridge"), and (2) the Objection to Confirmation and Motion to Dismiss (Doc. No. 86) (the "Trustee's Motion to Dismiss") filed by Nancy J. Whaley, as chapter 13 trustee (the "Trustee"). For the reasons discussed below, the Court will deny all 13 of Ms. Johnson's motions, will grant in part and deny in part the Motion to Enforce, and will grant the Trustee's Motion to Dismiss. The Court now turns to the facts giving rise to all the motions.

### III.    <u>FINDINGS OF FACT</u>

#### A. <u>The Dispossessory Proceeding and Eviction</u>

Ms. Johnson rented an apartment from Northridge but fell behind on rent payments. Northridge filed a dispossessory proceeding against her in the State Court of Fulton County (the "State Court"), Case No. 24DD010497 (the "Dispossessory Proceeding"). After Ms. Johnson did not respond in the Dispossessory Proceeding, Northridge filed an application for writ of possession November 8, 2024 (the "Application"). Nearly a month later, Ms. Johnson filed this chapter 13 case on December 4, 2024.

Six days after Ms. Johnson filed this bankruptcy case, on December 10, 2024, the State Court entered a signed writ of possession on the docket in the Dispossessory Proceeding (the "Writ"). The Writ on its face reflects that a Fulton County magistrate judge signed it, and the date next to her signature is November 4, 2024. Although this signature date was clearly an error because Northridge did not apply for the Writ until November 8, the face of the Writ shows that it was signed by the magistrate judge prepetition but entered on the State Court's docket post-petition. These two dates on the face of the Writ proved to be a significant source of confusion to the parties and the Court over the next two months.

Notwithstanding the fact that the Writ entered on the State Court's docket post-petition, Northridge continued its efforts to collect rent and pursue eviction against Ms. Johnson. For example, Northridge sent an employee to Ms. Johnson's apartment January 4, 2025, and presented a "Demand for Compliance," which

4

asserted Ms. Johnson owed Northridge $12,435.28 due immediately and that Northridge would "take formal legal action for violating" the terms of her lease if Ms. Johnson did not pay the full amount within two days. Two days after her meeting with the Northridge employee, Ms. Johnson filed the First Sanctions Motion alleging Northridge's collection efforts violated the automatic stay provisions of 11 U.S.C. § 362 and requesting damages. Two days later, on January 8, 2025, Northridge evicted Ms. Johnson and her minor children from the apartment without seeking relief from the automatic stay.[1]

## B. The Pre-Hearing Motions and Proceedings

The next day Ms. Johnson filed the Second Sanctions Motion requesting damages caused by the eviction. Five days later Ms. Johnson filed the Third Sanctions Motion requesting similar relief. The Court initially scheduled the first three motions for a hearing on February 4, 2025, but Ms. Johnson soon filed another motion requesting similar relief on an *ex parte* basis prior to the scheduled hearing (Doc. No. 55). The Court held a hearing on the *ex parte* motion and denied it without prejudice (Doc. No. 71) because it was unclear at that time if Northridge had received proper notice of the various motions and the bankruptcy case because it had neither

---

[1] The parties dispute whether Northridge was aware of the bankruptcy case prior to the date of eviction. Ms. Johnson argues she notified Northridge by email shortly after filing the case and again in person to the employee who visited her apartment January 4. Northridge disputes these assertions. Northridge also argues that the notice address Ms. Johnson provided for Northridge in her list of creditors—i.e., the address to which the Court served the initial notice of the bankruptcy case and other documents filed in the bankruptcy case—is not a valid address. Although the Court need not resolve the issue given the posture of the case, the Court notes that the notice address Ms. Johnson provided in her list of creditors is an address that Northridge itself provided on its complaint in the Dispossessory Proceeding, and it is difficult to credit Northridge's arguments that the address is somehow invalid.

responded nor appeared at the hearing or in the bankruptcy case. The Court also had substantial questions about whether the exception to the automatic stay under § 362(b)(22) applied to the eviction because Ms. Johnson's own allegations in the pending motions and other documents of record indicated that Northridge obtained the Writ prepetition. Ms. Johnson immediately filed the Emergency Sanctions Motion requesting relief similar to the previous motions and a hearing on shortened notice. Northridge responded to the Emergency Sanctions Motion (Doc. No. 81) and attached the Writ, which was the first time the Writ appeared on this Court's docket. Northridge argued that it obtained the Writ November 4 (the magistrate judge's apparent signature date), and thus § 362(b)(22) applied and excepted the eviction from the automatic stay.

The Court held a hearing in late January on the Emergency Sanctions Motion, and the Court pointed out that the magistrate judge's signature date preceded the date Northridge applied for the Writ, which could not be correct. The Court further questioned whether the signature date mattered for purposes of § 362(b)(22) given that the Writ did not enter on the State Court's docket until December 10—post-petition. The Court continued the hearing for a few days to allow Northridge's counsel to clarify these issues. Northridge filed an amended response three days later (Doc. No. 85), which attached an order from the State Court clarifying that the magistrate judge signed the Writ November 14 instead of November 4 (the "Clarification Order"). In the amended response and at the continued hearing, Northridge continued to argue that the date the magistrate judge signed the Writ (now clarified to be

November 14) was the date it obtained the writ for purposes of § 362(b)(22) and that the automatic stay did not apply to the eviction. Unconvinced, the Court set all of Ms. Johnson's pending motions for an evidentiary hearing February 26 (the February Hearing).

When the parties filed their exhibits five days before the February Hearing (Doc. Nos. 99 and 100), Northridge included another order from the State Court titled Order Issuing the Writ of Possession Nunc Pro Tunc to November 14, 2024 (the "Nunc Pro Tunc Order"). The Nunc Pro Tunc Order shows that Northridge filed a motion of some sort in the State Court following the first two hearings on Ms. Johnson's various motions without seeking relief from the automatic stay. The Nunc Pro Tunc Order also purports to deem the Writ issued *nunc pro tunc* to the November 14 signature date.

Three days after Northridge filed its exhibits, and two days before the February Hearing, Ms. Johnson filed her final Pre-Hearing Motion, the New Evidence Motion. While Ms. Johnson's first four Pre-Hearing Motions all focused on the post-petition collection efforts and eviction, the New Evidence Motion raised new allegations relating to Northridge's conduct in the Dispossessory Proceeding. Understandably, the New Evidence Motion asked the Court to strike or declare void the Clarification and Nunc Pro Tunc Orders as stay violations. But the New Evidence Motion went much further, arguing that Ms. Johnson had discovered evidence that Northridge was engaged in much more nefarious conduct: tampering with or outright falsifying the Writ and other documents of record in the Dispossessory Proceeding.

7

Ms. Johnson attached dozens of pages of court filings from other State Court dispossessory proceedings involving Northridge or its counsel and asked for multiple forms of relief. Among other things, Ms. Johnson requested that she be allowed to submit the new evidence attached to the motion for the Court's review but to exclude Northridge's counsel from having any access to the new evidence. Ms. Johnson also asked that the Court cancel the February Hearing altogether and enter judgment in her favor immediately. The Court granted the New Evidence Motion only to the extent it requested that Ms. Johnson be allowed to submit the documents attached to the New Evidence Motion at the February Hearing. (*See* Doc. No. 102). The Court denied any request to cancel the February Hearing or exclude Northridge or its counsel from reviewing the new evidence. The Court further reserved all other issues for the scheduled February Hearing.

### C. **The February Hearing and Settlement**

The February Hearing went forward as scheduled. Ms. Johnson, the Trustee, and counsel for Northridge, together with three employee representatives, attended the hearing in person. Ms. Johnson offered argument, testimony, and documents supporting her various claims and damages. Her evidence supporting actual damages, however, was limited to (1) brief testimony about the emotional distress that she and her children experienced because of the eviction, and (2) testimony that Northridge damaged or took two mounting brackets for large smart boards, but Ms. Johnson had no evidence of the value of the brackets. Much of her testimony and

argument, and nearly all the documentary evidence,[2] focused on her allegations that Northridge tampered with or falsified the Writ and other documents or otherwise engaged in misconduct in the Dispossessory Proceeding. Although the Court ultimately excluded as irrelevant all court documents from dispossessory proceedings other than Ms. Johnson's Dispossessory Proceeding, the Court reviewed all of Ms. Johson's proffered evidence in detail and allowed her to give testimony and argument about its relevance and how it supported her argument that Northridge falsified or tampered with the Writ or other documents. The argument consisted of comparing various dates between various documents and arguing that similarities in dates and filing stamps, along with some meta data, proves that Northridge is engaged in a scheme to create outright falsified writs of possession. In short, the Court simply finds no merit to Ms. Johnson's assertions that Northridge somehow falsified the Writ—a document entered on the public record of the State Court by the State Court.

Northridge put on testimony from its employees and evidence regarding whether Northridge received notice of the bankruptcy case, Ms. Johnson's personal property at the apartment at the time of the eviction, and the events of the eviction itself. At the conclusion of the evidence, the parties made their final arguments. Counsel for Northridge acknowledged that under normal rules and law governing

---

[2] Ms. Johnson's proffered exhibits consisted of (1) documents from her own Dispossessory Proceeding, (2) email correspondence between Ms. Johnson and an employee of Northridge, (3) the January 4 Demand for Compliance Northridge served on Ms. Johnson prior to the eviction, (4) dozens of pages of documents and screen shots of electronic dockets from other dispossessory proceedings filed by Northridge or its counsel, and (5) correspondence between Northridge's counsel and Ms. Johnson related to settlement negotiations. The court admitted all Ms. Johnson's documents except for the settlement email from Northridge's counsel and the documents from other dispossessory proceedings.

Georgia civil procedure, orders in Georgia courts are effective when they are entered on a Court's docket, not the date a judge signs them. The Court then asked pointed questions of Northridge's counsel regarding the Nunc Pro Tunc Order and how, if the date of entry on the docket is the date an order becomes effective, the Court could view the effort to backdate the Writ in the State Court as anything other than a stay violation itself.

After closing arguments, the Court announced that it planned to take the matter under advisement but invited the parties into chambers for a settlement conference off the record. The Court made clear that the settlement conference was completely voluntary and that any party could leave at any point. After discussion, Northridge and Ms. Johnson agreed to the terms of a settlement. The Court resumed the hearing on the record, at which time the Court repeated on the record that the settlement conference was voluntary and that the parties had the opportunity to leave at any time. The Court then read the terms of the settlement as it understood them into the record. Counsel for Northridge requested two changes—adding himself and his firm to a release from Ms. Johnson and striking any requirement that Northridge have the Dispossessory Proceeding dismissed. Ms. Johnson twice confirmed she had no objections to the changes. The Court then read the following terms into the record for clarity (the "Settlement Terms"):

1. The respondents Greystar and WOP 550 Northridge, LLC will waive the $12,851.44 (which they asserted Ms. Johnson owed under the lease) and forgive that indebtedness and any other indebtedness under the lease by Ms. Johnson, who is being released from all future liability of any kind under the lease;

10

2. Within 21 days of the date of the hearing, Greystar and/or WOP 550 Northridge, LLC will issue a check in the amount of $6,000 made payable to Denisha Johnson and delivered to her address at 7359 Deep Run, Apt. 422 Bloomfield Hills, MI 48301;

3. Counsel for Northridge will seek to have the dispossessory action sealed and Ms. Johnson will cooperate with such efforts;

4. Ms. Johnson agrees that upon receipt of the $6,000 and satisfaction of amounts due under the lease, she agrees to release and waive any and all claims of any kind she may have against Greystar and/or WOP 550 Northridge, LLC, Michael Williams, Fowler, Hein, Cheatwood & Williams P.A., and employees and agents of that firm.[3]

5. Upon receipt of the $6,000, Ms. Johnson will file a notice with the bankruptcy court and the Court will cause the bankruptcy case to be dismissed.

The Court then asked counsel for Northridge if those terms are acceptable to him and his client, to which he responded "yes." Counsel then asked whether he should draft a settlement agreement, and the Court stated he could, but the Court made clear it wanted the parties to agree to the Settlement Terms on the record. Counsel for Northridge stated the terms as recited by the Court were accurate. The Court then asked Ms. Johnson if she agreed to the terms as recited by the Court, and she answered "yes I do." The Court then asked Ms. Johnson, "you have no reservations about entering into a settlement agreement on those terms," and Ms. Johnson responded, "no." After some discussion about filing logistics and whether provisions regarding dismissal of the bankruptcy case should be included in a settlement agreement, the Court asked Ms. Johnson one final time whether she was "fully on board and fully agreed to the terms we've talked about on the record," to which Ms.

---

[3] The Court emphasized that this release is a "complete release of any and all claims that you have."

Johnson responded, "yes, your honor." The Court then asked counsel for Northridge to draft a settlement agreement for Ms. Johnson's review and concluded the hearing.

### D. The Post-Hearing Correspondence and Motions

Later that night, Ms. Johnson sent an email to counsel for Northridge and the Trustee indicating that she considered the Settlement Terms to be proposed and subject to further review and negotiation, and that she needed time to consult legal counsel. The next day, February 27, Ms. Johnson filed the first of eight Post-Hearing Motions challenging the Settlement Terms. Over the next several days and weeks, Ms. Johnson filed the other seven Post-Hearing Motions. In summary, the Post-Hearing Motions challenge the enforceability of the Settlement Terms on a variety of bases, including lack of a signed written agreement; fraud, misrepresentation, or coercive or similar misconduct by Northridge; new evidence proving the Writ was fraudulent or other evidence of document tampering; undue pressure; duress; lack of capacity; mistake of fact and law; lack of access to PACER; and lack of counsel at the February Hearing.

Meanwhile, Counsel for Northridge drafted a settlement agreement and emailed it to Ms. Johnson on March 1. Over the next several days, Ms. Johnson, counsel for Northridge, and the Trustee engaged in email correspondence that made several things clear: (1) Ms. Johnson had no intention of honoring the Settlement Terms and threatened to report counsel for Northridge to the State Bar of Georgia and the U.S. Attorney if Northridge did not renegotiate on terms drastically different than the Settlement Terms; (2) Northridge had no intention of renegotiating the

12

Settlement Terms; (3) Ms. Johnson continued to focus on her allegations about falsified writs and a pervasive scheme by Northridge or its counsel to tamper with and falsify court documents; and (4) counsel for Northridge implored Ms. Johnson to seek advice of counsel and honor the Settlement Terms or it would file a motion to enforce the Settlement Terms.

Northridge further attempted to honor its obligations under the Settlement Terms by mailing a check for $6,000 to Ms. Johnson, forgiving the lease obligations, and drafting a motion to seal the Dispossessory Proceeding for Ms. Johnson's review. Ms. Johnson repeatedly made clear that she rejected the check and the Settlement Terms. Northridge eventually filed its Motion to Enforce requesting that the Court enforce the Settlement Terms and attaching email correspondence between counsel and Ms. Johnson following the February Hearing. Northridge also requests sanctions against Ms. Johnson pursuant to Bankruptcy Rule 9011 for filing the Post-Hearing Motions and refusing to honor the Settlement Terms.

### E.  **The March Hearing**

The Court scheduled the Post-Hearing Motions and Motion to Enforce for another hearing on March 25, 2025 (the March Hearing).[4] At the March Hearing, the Court allowed Ms. Johnson the opportunity to present arguments and evidence supporting all the Post-Hearing Motions. Her arguments and evidence focused mostly on irregularities in the documents and procedures in the Dispossessory Proceeding,

---

[4] The Motion to Strike and the Second Motion to Strike did not appear on the docket in the bankruptcy case until after the March Hearing, but Ms. Johnson emailed the motions to chambers and the other parties before the March Hearing, and the Court considered them at the March Hearing,

particularly focusing on the fact that a magistrate judge signed the Writ even though the Dispossessory Proceeding was pending in the State Court.[5] With respect to the Settlement Terms, she argued only that she wanted to renegotiate the terms because she had traveled from Michigan for 12 hours prior to the February Hearing. Ms. Johnson offered no testimony in support of her Post-Hearing Motions, and the only exhibits she submitted were the documents attached to the Motion to Strike and the Second Motion to Strike, which consisted of documents from Ms. Johnson's Dispossessory Proceeding, more documents from other dispossessory proceedings, an email from counsel for Northridge to Ms. Johnson encouraging her to withdraw her motions and retain counsel to assist her, and drafts of the settlement agreement and motion to seal prepared by Northridge's counsel.[6]

Northridge argued that Ms. Johnson raised no new issues or evidence since the February Hearing, and the Post-Hearing Motions were nothing more than a bad faith attempt to renegotiate the Settlement Terms. Ms. Johnson argued in response that she was not proceeding in bad faith but simply trying to obtain a fair result given the distress and harm caused to her and her children by the eviction. Ms. Johnson concluded her arguments by again focusing on procedural issues related to the

---

[5] Counties in Georgia generally have up to three separate trial courts with distinct but often overlapping jurisdiction: a superior court, a state court, and a magistrate court. Northridge filed the Dispossessory Proceeding in the Fulton County State Court, but the judge who signed the orders is a Fulton County Magistrate Court judge. Ms. Johnson takes issue with what she perceives to be an inappropriate and misleading blending of the different courts.

[6] Ms. Johnson also filed with her Post-Hearing Motions (1) portions of a LinkedIn article discussing allegations of fraudulent and discriminatory conduct against Greystar and a law firm that has no apparent relation to counsel for Northridge and (2) several anonymous online reviews of Northridge's counsel from an unknown web page. Although the Court has reviewed those documents, Ms. Johnson did not submit them as exhibits at any hearing, and the Court does not find them relevant in any case.

Dispossessory Proceeding and alleged irregularities in the form of documents in that case to argue that no valid Writ ever existed. The Court took the matter under advisement at the conclusion of the March Hearing.

### F. **The Bankruptcy Case and Motion to Dismiss**

Other than the above proceedings related to Northridge, little has taken place in Ms. Johnson's chapter 13 bankruptcy case. Ms. Johnson filed a statement of financial affairs, schedules, and a chapter 13 plan proposing to pay $349.60 per month (Doc. Nos. 27 and 28), but the Trustee's Motion to Dismiss raises 25 separate objections to Ms. Johnson's chapter 13 plan. At the March Hearing the Trustee stated that no plan payments have been made, certain documents required under § 521 remain outstanding, filed schedules are incomplete, and the plan appears to serve no purpose because there are no known secured creditors, and no creditors have filed claims before or after the bar date. Accordingly, the Trustee requests that the bankruptcy case be dismissed.

A few days after the March Hearing, Ms. Johnson emailed a document to chambers titled Motion to Dismiss After Court Order of Dispute Is Resolved in Favor of the Debtor ("Debtor's Motion to Dismiss"). Debtor's Motion to Dismiss, to date, does not appear on the docket of the bankruptcy case, and it is not clear if Ms. Johnson attempted to file it through the Clerk's office.[7] The Motion to Dismiss reiterates many of the arguments Ms. Johnson raised in the Post-Hearing Motions but also discusses

---

[7] At the beginning of the case pro se debtors like Ms. Johnson had the ability to file documents via email to the Clerk's office pursuant to Covid-era rules under the Court's Amended and Restate General Order 45-2021. The Court rescinded that general order during the pendency of this case by General Order 49-2025, requiring all future documents to be filed in person or delivered to the Clerk's office.

some issues related specifically to her bankruptcy case and issues she experienced with preparing bankruptcy documents and tax returns. Ms. Johnson requests that the Court dismiss her bankruptcy case if the Court rules in her favor on the dispute with Northridge, but she requests that the Court not dismiss the bankruptcy case if the Court does not rule in her favor.

## IV.    ANALYSIS AND CONCLUSIONS OF LAW

Although this case has generated a substantial number of filings and proceedings in a short amount of time, ultimately the appropriate relief boils down to whether the Settlement Terms are enforceable. All the motions (1) ask the Court to either enforce or not enforce the Settlement Terms, or (2) assert claims released by Settlement Terms. Thus, the Court first analyzes whether to enforce the Settlement Terms.

### A. The Settlement Terms Constitute an Enforceable Agreement

Ms. Johnson's arguments evolved and expanded over the course of the Post-Hearing Motions, but they assert in various ways the following arguments:

- The Settlement Terms were not final until agreed in a signed writing;

- Northridge engaged in fraud, misrepresentation, document tampering, or similar conduct;

- New information and newly discovered evidence warrant renegotiation;

- The Settlement Terms were agreed to under undue pressure and/or duress;

- Ms. Johnson suffered from a lack of capacity;

16

- Ms. Johnson did not have counsel at the February Hearing;

- Ms. Johnson's PACER access was limited;

- Mistake of fact and law; and

- The Settlement Terms were unreasonable.

Northridge disputes these various theories and argues that the Settlement Terms agreed to on the record at the February Hearing constitute an enforceable agreement under Georgia law. The Court agrees with Northridge.

Federal courts have "inherent power to summarily enforce settlement agreements entered into by parties litigant in a pending case."[8] "The construction of settlement contracts is governed by the state law applicable to contracts in general. Here, Georgia law governs both whether there was a settlement agreement and the construction of any alleged settlement agreement."[9]

> In Georgia, settlement agreements are highly favored under the law and will be upheld whenever possible as a means of resolving uncertainties and preventing lawsuits. In general, an oral settlement reached between the parties is enforceable if the parties' attorneys are vested with the power to enter into such agreements and do so before the court on behalf of the litigants, absent fraud, collusion, or express prohibition of such an agreement. When it is undisputed that a settlement agreement is definite, certain, and unambiguous, the court is obligated to put an end to the litigation by making the settlement its own judgment.[10]

---

[8] *Ford v. Citizens & Southern Nat. Bank, Cartersville*, 928 F.2d 1118, 1111 (11th Cir. 1991) (quoting *Cia Anon Venezolana de Navegacion v. Harris*, 374 F.2d 33, 36 (5th Cir.1967)).

[9] *First Am. Title Ins. Co. v. King (In re King)*, 604 B.R. 93, 96 (Bankr. N.D. Ga 2019) (quoting *Hopson v. Hopson (In re Hopson)*, 216 B.R. 297, 301 (Bankr. N.D. Ga. 1997)).

[10] *Sanders v. Graves*, 297 Ga. App. 779, 678 S.E.2d 220 (2009); *see also Triple Eagle Assocs., Inc. v. PBK, Inc.*, 307 Ga. App. 17, 19-20, 704 S.E.2d 189, 193 (2010) (agreements "to settle a lawsuit pursuant to terms announced in open court can create an enforceable contract. For such a contract to be

"The elements of contract formation under Georgia law are (1) parties able to contract, (2) consideration, (3) the parties' assent to the terms of the contract, and (4) a subject matter upon which the contract can operate."[11]

The Settlement Terms agreed to on the record at the February Hearing satisfy the requirements under Georgia law for contract formation. The parties, Northridge and Ms. Johnson, have the ability to contract.[12] The consideration includes a $6,000 payment and forgiveness of debt from Northridge, and a release of all claims by Ms. Johnson.[13] The parties clearly assented, multiple times, to the Settlement Terms on the record at the February Hearing, and Ms. Johnson expressed no reservations, conditions, or doubt about what she was agreeing to on the record. The Court clearly read into the record the terms—i.e., the subject matter—and Ms. Johnson does not argue that any terms are vague, uncertain, indefinite, or incomplete; nor does Ms. Johnson argue that any essential terms are missing.

---

enforceable, the parties must agree on all material terms, and those terms cannot be incomplete, vague, uncertain or indefinite"); *Newton v. Ragland*, 325 Ga. App. 371, 373, 750 S.E.2d 768, 770 (2013) ("[T]he law . . . favors compromise, and when parties have entered into a definite, certain, and unambiguous agreement to settle, it should be enforced."); *In re King*, 604 B.R. at 97 (citing *Torres v. Elkin*, 317 Ga. App. 135, 730 S.E.2d 518 (2012); *In re Hopson*, 216 B.R. at 301 (citing *Blum v. Morgan Guar. Trust Co.*, 709 F.2d 1463, 1467 (11th Cir.1983)).

[11] *Schwindler v. Comm'r, Ga. Dept. of Corrections*, No. 23-10457, 2024 WL 3666251 *4 (11th Cir. Aug. 6, 2024) (unpublished) (citing O.C.G.A. § 13-3-1).

[12] Georgia law presumes that all persons have the mental capacity to enter into a contract, and the burden is on the person challenging capacity to show capacity is lacking. *Kindred Nursing Ctrs. Ltd. P'ship v. Chrzanowski*, 338 Ga. App. 708, 714, 791 S.E.2d 601, 605 (2016). The Court addresses below Ms. Johnson's arguments that she was suffering under duress, undue influence, or lack of capacity.

[13] "[T]he compromise of disputed claims, as recited in a settlement agreement, is valuable consideration in the eyes of the law." *ALR Oglethorpe, LLC v. Fidelity Nat'l Title Ins. Co.*, 361 Ga. App. 776, 781, 863 S.E.2d 568, 574 (2021) (citing *Byers v. McGuire Properties*, 285 Ga. 530, 535-536 (2), 679 S.E.2d 1 (2009), overruled on other grounds by *SRM Group v. Travelers Property Cas. Co. of America*, 308 Ga. 404, 841 S.E.2d 729 (2020)).

Ms. Johnson first argues that the Settlement Terms are not enforceable because she has not signed a written agreement.[14] Generally, contracts can be oral and are not required to be in writing, and settlement agreements "will be enforced even if the parties fail to follow through and sign the final document."[15] Courts, however, have recognized three scenarios under Georgia law in which a settlement agreement must be in writing: (1) the agreement falls under the Georgia statute of frauds, O.C.G.A. § 13-5-30; (2) the parties have conditioned the agreement on a writing; and (3) the existence or terms of the settlement agreement are disputed.[16]

The Settlement Terms do not implicate the statute of frauds, and Ms. Johnson does not argue that they do.[17] Nor did the parties condition their agreement to the Settlement Terms on a written document. Although counsel for Northridge asked if he should draft a settlement agreement, and the Court instructed him that he could do so, it was not a condition to the parties' agreement to the Settlement Terms at the February Hearing, and the Court made clear that its intention at the February Hearing was to have the parties fully agree to the Settlement Terms on the record.

---

[14] Ms. Johnson raised this argument in her first Post-Hearing Motion, the Notice of Pending Settlement, but later Post-Hearing Motions acknowledged an agreement on the record at the February Hearing and asserted different reasons to set aside the Settlement Terms.

[15] *Metlife Life and Annuity Co. of Connecticut v. Akpele*, 131 F.Supp.3d 1322, 1327-28 (N.D. Ga. 2015) (citing *Cumberland Contractors, Inc. v. State Bank & Trust Co.,* 327 Ga. App. 121, 127, 755 S.E.2d 511 (2014)).

[16] *In re King*, 604 B.R. at 99.

[17] O.C.G.A. § 13-5-30 requires a written agreement for (1) a promise by a conservator, guardian, personal representative, or trustee to answer damages out of his or her own estate; (2) a promise to answer for the debt, default, or miscarriage of another; (3) any agreement made upon consideration of marriage; (4) any contract for sale of lands, or any interest in, or concerning lands; (5) any agreement not to be performed within one year from the making thereof; any promise to revive a debt barred by a statute of limitation; and any commitment to lend money.

As to the third circumstance in which a writing might be required—a party disputes the existence or terms of an agreement—Georgia courts have recognized that agreements made in open court need not be in writing.[18] Other courts in Georgia have found that a transcription of a recorded oral agreement satisfies the requirement that an agreement be in writing.[19] The audio recording of the February Hearing is available on the Court's docket at Doc. No. 112 and can be readily transcribed. The Court finds the Settlement Terms to be an enforceable agreement despite the lack of a signed written agreement.

## B. There Is No Evidence of Fraud, Misrepresentation, Document Tampering, or Similar Misconduct

Most of Ms. Johnson's arguments in the Post-Hearing Motions and at the March Hearing focus on allegations that Northridge or its counsel engaged in fraudulent or similar misconduct in the Dispossessory Proceeding. Although fraud or similar conduct could form a basis to set aside the Settlement Terms,[20] after carefully considering the arguments and evidence presented by Ms. Johnson, the Court sees no evidence that Northridge engaged in fraudulent or similar conduct that would warrant setting aside the Settlement Terms. In particular, the Court sees no evidence

---

[18] *See White v. Owens*, 172 Ga. App. 373, 374, 323 S.E.2d 167, 169 (1984) ("If, as in the instant case, the agreement is made in open court, there is no requirement even that it be in writing." (citing *Wilson v. State,* 145 Ga. App. 315, 244 S.E.2d 355 (1978); *Davenport v. Davenport,* 218 Ga. 475, 128 S.E.2d 772 (1962)); *Triple Eagle Assocs.*, 307 Ga. App. 17, 19 n.7, 704 S.E.2d 189, 193.

[19] *Sanders v. Graves*, 297 Ga. App. 779 (deposition transcription); *Tranakos v. Miller*, 220 Ga. App. 829, 833, 470 S.E.2d 440, 444 (1996) (transcript of recorded phone calls satisfies writing requirement).

[20] Georgia law allows for rescission of contracts by a defrauded party. O.C.G.A. § 13-4-60. Further, Fed. R. Civ. P. 60(b)(3), applicable through Bankruptcy Rule 9024, allows the Court to relieve a party from a final judgment, order, or proceeding for fraud, misrepresentation, or misconduct by an opposing party.

20

that Northridge or its counsel somehow fabricated or falsified the Writ or other documents in the Dispossessory Proceeding.

The Writ is an order of the State Court appearing on its public docket. Ms. Johnson repeatedly argues that *Northridge* filed the Writ on the docket on December 10, but there is no evidence that Northridge somehow entered an order of the State Court on the State Court's own docket without the State Court's awareness, a conclusion particularly unlikely given that Northridge obtained two subsequent orders from the State Court directly addressing the Writ. Ms. Johnson's proffered evidence of tampering or fabrication consists mostly of documents pulled from other, unrelated dispossessory proceedings filed by Northridge or its counsel. Ms. Johnson argues that similarities, or dissimilarities, in various dates, filing stamps, court captions, and forms between her case and other cases prove that Northridge used documents from other cases to fabricate or tamper with documents filed in her case. But the Court's review of the evidence reveals little more than the fact that Northridge, its counsel, and the State Court (and magistrate judges) deal with voluminous dispossessory cases that sometimes result in similar filing and signature dates, not evidence of outright fabrication of public State Court orders.[21]

---

[21] Ms. Johnson also submitted the Writ along with four writs of possession from other dispossessory cases that purportedly show meta data from each document that someone named Madalynn Matthews altered the writs of possession on November 14 and 17, 2024. It is not clear who Madalynn Matthews is, but Ms. Johnson seems to assume that she is in league with Northridge and the meta data shows tampering of court documents by Northridge. But it is just as plausible, if not more so, that Madalynn Matthews works for the State Court, and the alterations do not show a nefarious intent but rather a housekeeping measure by the State Court to delete old filing stamps in the upper right-hand corner of documents that are filed multiple times on the State Court's docket, lest multiple filing stamps, one on top of the other, render the stamps illegible.

Ms. Johnson also argues that Northridge is behaving fraudulently by mixing documents from state court and magistrate court, particularly focusing on the fact that the Dispossessory Proceeding was filed in State Court but signed by a magistrate judge. Based on these facts she argues the Dispossessory Proceeding and Writ are jurisdictionally invalid. Ms. Johnson attaches documents from other dispossessory proceedings filed by Northridge or its counsel to argue that the differences between such documents and her Dispossessory Proceeding prove lack of jurisdiction or some form of fraudulent conduct by Northridge. Although the Court understands Ms. Johnson's confusion on this issue, the Court sees no evidence of fraudulent activity or jurisdictional defect. Both Georgia state courts and Georgia magistrate courts have jurisdiction over dispossessory proceedings. O.C.G.A. §§ 15-7-7(a)(2) (state court jurisdiction) and 15-10-2(a)(6) (magistrate court jurisdiction). Although it might be more common for lessors to file dispossessory proceedings in Georgia magistrate courts, it is not a jurisdictional defect to file them in a Georgia state court. Nor is the fact that a magistrate judge signed the Writ and other orders evidence of jurisdictional deficiency, tampering, or the like. Georgia law allows for courts to designate judges from other courts within the county to handle various matters for various reasons, *see, e.g.,* O.C.G.A. § 15-1-9.1, and it is not uncommon for magistrate judges to preside by designation over dispossessory proceedings filed in a Georgia state court. Indeed, several of the documents Ms. Johnson filed from other dispossessory cases in State Court show orders signed by the very same magistrate judge who signed the Writ and orders in Ms. Johnson's Dispossessory Case. The Court

22

does not see this as evidence of tampering or fraud, but instead, routine practice in the State Court.

Ms. Johnson also argues in various places and in various ways that the alleged stay violations of Northridge or its counsel are the fraudulent or otherwise improper misconduct warranting reconsideration of the Settlement Terms. That conduct, however, is precisely what was being settled and all occurred well before the February Hearing. It is circular to argue that the settlement of Northridge's stay violations should be reconsidered or set aside because Northridge violated the stay. It is also incorrect to argue that the automatic stay somehow prevents settlement discussions of alleged violations of the stay—which is a claim brought by Ms. Johnson, not Northridge.

Ms. Johnson argues that she was not aware of the full extent of Northridge's misconduct during the settlement conference, but all her evidence and arguments on this point relate to her misplaced allegations that Northridge was fabricating or tampering with documents in the Dispossessory Proceeding. To the extent she argues that there were procedural deficiencies in the Dispossessory Proceeding, such as a failure to serve her with the Writ, the evidence on this point is questionable at best, but any procedural deficiencies in the Dispossessory Proceeding occurred long before the February Hearing, and Ms. Johnson would have known long before the February Hearing whether she was served with the Writ.

Finally, Ms. Johnson argues in various places that Northridge or its counsel engaged in coercive or fraudulent tactics in reaching the Settlement Terms. That

23

argument fails for two reasons. First, the Settlement Terms were the result of a settlement conference held in the chambers of the presiding judge in this case. The Court did not witness any coercive, fraudulent, or inappropriate tactics in the settlement conference, and Ms. Johnson did not even suggest such tactics at the February Hearing. Second, to the extent Ms. Johnson argues that emails from Northridge's counsel prior to the February Hearing constituted coercive tactics, the Court has reviewed the emails (even though they were excluded from the evidence at the February Hearing), and the Court sees no evidence of coercive or fraudulent tactics from those emails. The Court finds no evidence of fraud, misrepresentations, coercion, or similar conduct that would warrant reconsideration or setting aside the Settlement Terms, whether under federal rules of procedure or Georgia law.

### C. **No New Evidence Warrants Reconsideration of the Settlement**

Even if the Court were to find that the various documents presented by Ms. Johnson show some form of irregularity in the Dispossessory Proceeding, or even fraudulent conduct, Ms. Johnson was aware of these issues when she agreed to the Settlement Terms. Indeed, Northridge's alleged fraudulent conduct formed the bulk of Ms. Johnson's argument and evidence at the February Hearing. Ms. Johnson asserts she was not aware of the extent of Northridge's fraud at the February Hearing, but the "new evidence" presented after the February Hearing fails to meet the requirement of newly discovered evidence under Fed. R. Civ. P. 60(b)(2), which contemplates relief from an order or proceeding on the basis of "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to

24

move for a new trial under Rule 59(b)." Reconsideration "under Rule 60(b)(2) is an extraordinary motion and the requirements of the rule must be strictly met."[22] To meet the standard, Ms. Johnson must establish the following five elements: (1) the evidence must be newly discovered since the trial; (2) due diligence on the part of the movant to discover the new evidence must be shown; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material; and (5) the evidence must be such that a new trial would probably produce a new result.[23]

Most of the "new evidence" pre-dates the February Hearing,[24] and there is no basis to conclude that such evidence could not have been discovered prior to the February Hearing with sufficient due diligence. Assuming Ms. Johnson could show she exercised due diligence, the additional dispossessory filings are merely cumulative, immaterial, and would not produce a new result. Like the documents Ms. Johnson presented at the February Hearing, the Court sees nothing in the new evidence that leads the Court to find Northridge was engaged in a fraudulent scheme to falsify Writs.

The only new evidence that post-dates the February Hearing is (1) a draft motion to seal the Dispossessory Proceeding prepared by Northridge's counsel as contemplated by the Settlement Terms; (2) a draft settlement agreement prepared by Northridge's counsel, and (3) what appears to be a return of service for the Writ of

---

[22] *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1316 (11th Cir. 2002) (citing *Scutieri v. Paige,* 808 F.2d 785, 793 (11th Cir. 1987)).

[23] *Id.*

[24] The various documents from other dispossessory cases presented as new evidence at the March Hearing all show filing dates in 2024 or January, 2025.

Possession in the Dispossessory Proceeding, which is stamped as filed March 17, 2025. The Court considers each document in turn.

Ms. Johnson's primary arguments relating to these three documents address the motion to seal, which counsel for Northridge initially drafted with references to Georgia magistrate court rules instead of state court rules. Ms. Johnson seizes on this mistake to bolster her arguments that Northridge is engaged in some form of tampering or jurisdictional misconduct. But Ms. Johnson acknowledged at the March Hearing that counsel for Northridge corrected the mistakes soon after she pointed them out, and the Court does not view this apparent drafting error as evidence of some larger fraudulent conduct, jurisdictional problems, or evidence of a scheme or other improper conduct by Northridge that would merit reconsidering the Settlement Terms. Ms. Johnson also argues that the motion to seal is an attempt to cover up procedural errors, violations of the automatic stay, fraud, misconduct, or legal errors, but the motion to seal was an explicit component of the Settlement Terms and was intended for her benefit to minimize any impact of the Dispossessory Proceeding on her ability to rent property in the future. Moreover, as discussed, the Court sees no evidence of some fraudulent scheme that needs to be covered up, and, even if a scheme existed, the Dispossessory Proceeding and the conduct of Northridge is well-documented in this bankruptcy case. Sealing the Dispossessory Proceeding (which only the State Court can do) would do little to cover up any alleged fraudulent conduct, scheme, or stay violations by Northridge or its counsel.

26

Ms. Johnson's arguments about the draft settlement and return of service are even less compelling. On the settlement agreement, Ms. Johnson raises no concerns with the substance of the agreement and points out only a pagination inconsistency between the PDF and Word versions and incomplete or missing attachments. The Court does not understand how a pagination inconsistency shows any evidence of fraud or similar misconduct, and the Court's review of the draft agreement reveals no references to any exhibits or attachments that could be missing. With respect to the return of service filed in the Dispossessory Proceeding March 17, 2025, it is not clear to the Court what this document is, who filed it, what purpose it serves in the Dispossessory Proceeding, or how it shows any misconduct by Northridge. It appears to be filed by a marshal, not Northridge, and the document was not addressed at the March Hearing in any meaningful way. The Court fails to see what import it has on the Settlement Terms or other allegations raised by Ms. Johnson.

At the end of the day, the new evidence is either not new or not probative of any alleged misconduct of Northridge that was not explicitly addressed at the February Hearing and subsumed in the Settlement Terms.

### D. <u>The Evidence Does Not Support Finding Undue Influence or Duress</u>

Ms. Johnson argues that she agreed to the Settlement Terms under undue pressure, duress, or similar circumstance that renders the Settlement Terms unenforceable. Under Georgia law, undue influence "amount[s] to deception or force and coercion . . . so that [a person] is deprived of free agency and the will of another

is substituted for [hers]."[25] However, "[i]t is not enough to show that there was an opportunity to exert influence coupled with a substantial benefit . . . ; actual deprivation of the [influenced party's] free will is required."[26]

Duress, a recognized defense to contract formation in Georgia, "derives from OCGA § 13-5-6, which provides, in pertinent part: 'Since the free assent of the parties is essential to a valid contract, duress, either by imprisonment, threats, or other acts, by which the free will of the party is restrained and [her] consent induced, renders the contract voidable at the election of the injured party.'"[27] Georgia courts note that, "[o]ne may 'not void a contract on grounds of duress merely because [she] entered into it with reluctance, the contract is very disadvantageous to [her], the bargaining power of the parties was unequal or there was some unfairness in the negotiations preceding the agreement.'"[28]

With these principles in mind, the Court concludes that Ms. Johnson's evidence does not support a finding that she agreed to the Settlement Terms because of undue influence or duress. The key component of both duress and undue influence is a lack

---

[25] *Slosberg v. Giller*, 314 Ga. 89, 97 (Ga. 2022) (quoting *Lewis v. Van Anda*, 282 Ga. 763, 766 (Ga. 2007))

[26] *Lewis*, 282 Ga. at 766 (citing *Holland v. Holland*, 277 Ga. 792, 793(2) (Ga. 2004)). Courts will also "closely scrutinize confidential relationships or facts which show that [a party] 'created the relationship of dominance' over the [party asserting undue influence.]" *Tidwell v. Critz*, 248 Ga. 201, 206 (Ga. 1981) (quoting *Scurry v. Cook*, 206 Ga. 876, 879 (Ga. 1950)). For a confidential relationship to exist, a party must be "so situated as to exercise a controlling influence over the will, conduct, and interest of the [influenced party.]" *Lewis*, 282 Ga. at 767. Further, if the influenced party has a "weakened mental state" that mental state may "support a finding of undue influence, as 'the influence necessary to dominate a weak mind is less than that necessary to dominate a strong one.'" *Lewis*, 282 Ga. at 767.

[27] *Frame v. Booth, Wade & Campbell*, 238 Ga. App. 428, 429 (1999) (quoting O.C.G.A. § 13-5-6).

[28] *Miller, Stevenson & Steinichen, Inc. v. Fayette Cnty.*, 190 Ga. App. 777, 777 (1989) (quoting *Tidwell*, 248 Ga. at 204).

of free will. Ms. Johnson's arguments to support duress or undue influence are that she was not in the right frame of mind because of the distress of the eviction and travel to the February Hearing. These facts do not support the conclusion that Ms. Johnson lacked the free will to agree to the Settlement Terms. Although Ms. Johnson may have been tired and stressed from the travel, her housing situation, and other circumstances related to the eviction, the Court observed nothing at the February Hearing that would lead it to believe that she lacked the free will to agree to the Settlement Terms. Indeed, Ms. Johnson has vigorously asserted her rights throughout this matter and did so at the February Hearing and settlement conference. The Court further saw no coercive, threatening, or fraudulent tactics by Northridge or its counsel at the February Hearing or the settlement conference, much less to a degree or type that would allow the Court to find that Ms. Johnson lacked free will. Further, no evidence suggests that Northridge enjoys any confidential or dominant position with respect to Ms. Johnson. Finally, the Court was very clear at the settlement conference that Ms. Johnson was free to leave whenever she pleased, and that participation was voluntary. Ms. Johnson expressed no reservations about participating in the settlement conference or agreeing to the Settlement Terms. The Court does not find sufficient evidence to support a finding of undue influence or duress.

### E. **Ms. Johnson Had the Capacity to Contract**

Ms. Johnson briefly argues that she lacked the capacity to agree to the Settlement Terms. Similar to her undue influence or duress arguments, she generally

refers to her state of mind resulting from mental distress and fatigue. Mental capacity, as it relates to enforceability of contracts, relates to a base level of mental competence. Under Georgia law, every person is presumed to have the basic mental competence to contract, and the party challenging capacity "must have been non compos mentis, that is, entirely without understanding, at the time the contract was executed."[29] As discussed, the Court's observations of Ms. Johnson at the February Hearing and settlement conference betrayed no indication that she lacked the requisite mental capacity to understand the Settlement Terms. She may have been tired and distressed, but that is not sufficient to set aside an agreement under Georgia law on competency grounds.

### F.  Lack of Counsel Does Not Render the Contract Unenforceable

Ms. Johnson argues in various motions that she was unrepresented by counsel and did not fully appreciate the Settlement Terms. Ms. Johnson cites no authority for the proposition that a settlement agreement is not enforceable because a party does not have counsel. Other courts have enforced settlement agreements agreed to by pro se parties,[30] and the Court is not aware of any authority under Georgia law that

---

[29] *Kindred Nursing Ctrs. Ltd. P'ship v. Chrzanowski*, 338 Ga. App. 708, 714, 791 S.E.2d 601, 605 (2016) (quoting *Nelson v. State Farm Life Ins. Co.*, 178 Ga. App. 670, 672, 344 S.E.2d 492 (1986)).

[30] *See, e.g., Datto v. Harrison*, 506 Fed. App'x 160 (3d Cir. 2012) (unpublished); *Henderson v. Yard House Glendale, LLC*, 456 Fed. App'x 701 (9th Cir. 2011) (unpublished); *Raquinio v. Cnty. Of Hawaii*, No. CV 20-00441 DKW-KJM, 2021 WL 11551789, at *3 (D. Haw. May 3, 2021) ("Plaintiff's status as a pro se litigant does not allow him the freedom to change his mind after executing the Settlement Agreement."); *McCray v. Cnty. of Orange*, No. 12-CV-3950 (CS), 2015 WL 13373605, at *2 (S.D.N.Y. Dec. 3, 2015) ("The fact that a '[p]laintiff proceed[s] *pro se* does not diminish the enforceability of the oral settlement agreement."); *Duff v. Comm'r Suffolk Cnty. Police Dept.*, No. 04-CV-1568 JFB MLO, 2007 WL 4373444, at *3 (E.D.N.Y. Dec. 10, 2007) ("if the agreement is knowing and voluntary, the *pro se* status of the litigant does not allow the litigant to escape from the terms of the valid agreement); *Willgerodt v. Hohri*, 953 F.Supp. 557 (S.D.N.Y.1997).

would render an otherwise enforceable settlement agreement unenforceable because a party is pro se. The Court nonetheless has considered whether the lack of counsel supports setting aside the Settlement Terms and concludes that it does not. Ms. Johnson has been free to engage counsel at any point during this bankruptcy case, stating in multiple pleadings both before and after the February Hearing that she was seeking to retain counsel.[31] Ms. Johnson raised no issues regarding the lack of counsel at the February Hearing, during the settlement conference, or at the time she agreed to the Settlement Terms. Despite ample time to hire counsel both before and after the February Hearing, and despite emails from counsel for Northridge imploring Ms. Johnson to retain counsel following the February Hearing, Ms. Johnson has not done so. Ms. Johnson's pro se status at the February Hearing does not support setting aside the Settlement Agreement.

### G. Lack of PACER Access Does not Render the Settlement Terms Unenforceable

Ms. Johnson argues in various places in her papers that a lack of access to PACER prevented her from discovering critical evidence, but the argument was not developed in any motions or at either hearing. It is unclear what evidence Ms. Johnson was not able to access on PACER, which provides access only to federal court dockets, not state court dockets. None of Ms. Johnson's "new evidence" supporting her positions in the Post-Hearing Motions appear to come from PACER but from various state court dockets in dispossessory proceedings. Ms. Johnson has not argued

---

[31] *See* Doc. Nos. 55, 62, 106, 110, and 120).

that she did not have access to Northridge's motions and evidence presented at any hearing, and it is not clear to the Court how Ms. Johnson's PACER access may have been restricted or blocked. Further, Ms. Johnson first raised the PACER issue in the New Evidence Motion, which predated the February Hearing. She did not raise the issue when she agreed to the Settlement Terms, and the Court finds no merit to the argument.

**H. No Mistake Warrants Setting Aside the Settlement Terms**

Ms. Johnson argues briefly that "she mistakenly believed that the opposing party's actions were lawful at the time of the settlement." The argument, although not well developed, appears to relate to whether Northridge violated the stay by evicting Ms. Johnson. Ms. Johnson has vigorously and consistently asserted that Northridge violated the automatic stay throughout these proceedings, and it is incredible to argue that Ms. Johnson mistakenly believed Northridge had not violated the automatic stay when she agreed to the Settlement Terms.

**I. The Settlement Terms Are Reasonable**

Finally, the Court briefly addresses Ms. Johnson's arguments that the Settlement Terms simply are not reasonable and should be renegotiated given the circumstances of her case. Assuming the Court could set aside the Settlement Terms if it found them to be unreasonable, the Court believes the Settlement Terms are reasonable. Although the Court understands why Ms. Johnson believes she is entitled to more damages, the Settlement Terms fall well within the range of reasonableness given the facts of this case. Although Northridge violated the automatic stay when it

evicted Ms. Johnson (and again when it sought an order from the State Court post-petition in an effort to undo its mistake) the ultimate damages award likely would not have been remotely as high as Ms. Johnson believes. Of note, Ms. Johnson presented very little evidence of damages, with virtually no evidence of property damages other than the lost mounting brackets of unknown value. Although Ms. Johnson may have been entitled to emotional distress damages, the only evidence of emotional distress was Ms. Johnson's limited testimony without any corroborating evidence, and the ultimate award for emotional distress likely would have been much closer to the total settlement value than amounts asserted by Ms. Johnson in her Post-Hearing Motions.[32] Based on the evidence presented at the February hearing, the Court does not consider this as a case presenting "appropriate circumstances" for punitive damages under § 362(k)(1), nor does the Court believe that Ms. Johnson's claims for fraud or similar misconduct in the Dispossessory Proceeding have any merit. In the end, the Court believed at the February Hearing and continues to believe that the Settlement Terms, on the whole, represent a fair and reasonable negotiated resolution of the dispute.

---

[32] "[A]t a minimum, to recover 'actual' damages for emotional distress under § 362(k), a plaintiff must (1) suffer significant emotional distress, (2) clearly establish the significant emotional distress, and (3) demonstrate a causal connection between that significant emotional distress and the violation of the automatic stay." *Id.* "Generalized evidence, without any additional, specific detail, does not show . . . significant emotional distress." *Id.* Normally, the testimony of the plaintiff alone is not sufficient to establish significant emotional distress, and a plaintiff must provide corroborating evidence, such as medical evidence or non-expert testimony from family members, friends, or co-workers. *See Dawson v. Washington Mutual Bank, F.A. (In re Dawson)*, 390 F.3d 1139, 1149-50 (9th Cir. 2004) (cited favorably by Eleventh Circuit in *Lodge*). "Corroborating evidence may not be necessary to prove emotional distress where the violator engaged in egregious conduct and significant emotional distress is readily apparent." *Lodge* 750 F.3d at 1272.

### J.  <u>The Settlement Terms Will Be Enforced</u>

The Court will not set aside the Settlement Terms and finds that they should be enforced as agreed to on the record at the Evidentiary Hearing. Northridge has already delivered a check and forgiven the lease obligations as required by the Settlement Terms. The release of all claims against Northridge and its counsel that Ms. Johnson agreed to on the record at the February Hearing is therefore in effect and enforceable, and all her pending motions will be denied. Counsel for Northridge is instructed to file the motion to seal in the Dispossessory Proceeding as modified to correct the proper court citations. The Court will not order any sanctions against Ms. Johnson as requested in the Motion to Enforce.

### K.  <u>The Bankruptcy Case Will Be Dismissed</u>

Having determined that the Settlement Agreement is enforceable, the only remaining question is whether to dismiss this bankruptcy case. The Court will dismiss the case for two reasons. First, the Settlement Terms contemplate that the case will be dismissed once Ms. Johnson receives the check for $6,000, which has occurred. Dismissal is therefore appropriate. Second, the record of the bankruptcy case shows no apparent purpose for proceeding with the chapter 13 case given that Northridge's claims, Ms. Johnson's largest creditor by far and the only apparent reason the case was filed in the first place, have been released by the Settlement Terms. Accordingly,

**IT IS ORDERED** that Northridge's Motion to Enforce is **GRANTED IN PART** to the extent it requests the Settlement Terms be enforced. The Settlement

Terms are enforceable against both Northridge and Ms. Johnson as agreed to on the record at the February Hearing and recited in this Memorandum Opinion and Order, and the releases provided by each party are in full force and effect.

**IT IS FURTHER ORDERED** that Northridge's Motion to Enforce is **DENIED IN PART** to the extent it requests sanctions against Ms. Johnson.

**IT IS FURTHER ORDERED** that the following Motions are **DENIED**:

- Motion for Sanctions for Violation of the Automatic Stay (Doc. No. 31, as amended at Doc. No. 34);

- Motion for Sanctions for Violation of Automatic Stay, Request for Damages, Restoration of Possession, Public Exposure Damages, and Humiliation Damages (Doc. No. 38, as amended by Doc. No. 40);

- Motion to Add Additional Evidence to the Motion for Sanctions for Violation of Automatic Stay, Request for Damages, Restoration of Possession, Public Exposure Damages, and Humiliation Damages (Doc. No. 47);

- Motion for Emergency Relief to Restore Possession of Property (Doc. No. 62);

- Emergency Motion for Protective Order and other relief (Doc. No. 101);

- Motion to Notify Court of Pending Settlement Negotiations and Request to Reserve Future Claims (Doc. No. 106);

- Motion for Contempt and Sanctions for Willful Violation of the Automatic Stay, Fraud, and Request to Strike Fraudulent Writ of Possession (Doc. No. 110);

- Motion to Contest Eviction and Enforce Automatic Stay (Doc. No. 111);

- Supplemental Motion to Strike the January 31, 2025 State Court Order as Void Ab Initio for Violation of the Automatic Stay and Reservation of Rights (Doc. No. 116);

- Motion to Reconsider Settlement Terms, Request for Emergency Hearing, and Request to Pause Settlement Pending Full Review of Newly Discovered Evidence (Doc. No. 120);

- Motion to Set Aside Settlement Agreement (Doc. No. 125);

- Emergency Motion to Strike Opposing Counsel's (Motion to Enforce Settlement) Due to Fraudulent Writ of Possession, Violation of Automatic Stay, and Grant Immediate Relief (Doc. No. 133);

- Emergency Motion to Strike Opposing Counsel's Motion to Enforce Settlement, Fraudulent Eviction and for Immediate Relief (Doc. No. 134).

**IT IS FURTHER ORDERED** that the Trustee's Motion to Dismiss is **GRANTED**: this bankruptcy case is **DISMISSED**.

The Clerk's office is directed to serve a copy of this Order on Debtor at the below address, counsel for WOP 550 Northridge, LLC and Greystar, and the Chapter 13 Trustee.

**END OF DOCUMENT**

**Denisha S. Johnson**
7359 Deep Run, Apt. 422
Bloomfield Hills, MI 48301